UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN LEE MOSS,

    Petitioner,

v.

    Case No. 18-cv-11697
    Honorable Linda V. Parker

GARY MINIARD,

    Respondent.
_____/

## OPINION AND ORDER

Petitioner Steven Lee Moss filed this habeas action pursuant to 28 U.S.C. § 2254, challenging his convictions for possession with intent to deliver 1,000 or more grams of cocaine and possession of a firearm during the commission of a felony in the Circuit Court for Oakland County, Michigan. He raised the following grounds in support of his request for habeas relief:

> I. Petitioner was deprived of his right to be represented by an attorney who would subject the prosecution's case to meaningful adversarial testing when his attorney agreed to a stipulated fact trial without Petitioner's authorization, conceded that "the crime occurred," and waived opening statement and closing argument.
>
> II. Petitioner was deprived of his Sixth Amendment right to counsel of choice during several critical stages of the proceedings and did not knowingly and intelligently waive his right to be represented by his retained counsel, Steingold, when he was represented by nonretained Attorney Dwyer without authorization.

> III. Where the prosecution's case relied solely on witness testimony, counsel's complete failure to conduct pretrial preparatory investigative interviews of any of the prosecution's witnesses constructively deprived Petitioner of his Sixth Amendment right to counsel because counsel was unable to subject the prosecution's case to any meaningful adversarial testing.
>
> IV. Petitioner received ineffective assistance of appellate counsel and has good cause for failing to raise the constitutional violations set forth within on direct appeal.

The Sixth Circuit has remanded the matter after reversing this Court's decision granting Petitioner habeas relief based on his first, third, and fourth claims. (*See* ECF Nos. 33, 54); *see also Moss v. Miniard*, 62 F.4th 1002 (6th Cir. 2023). Since the Sixth Circuit issued its mandate on February 21, 2024 (ECF No. 66), Petitioner has filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 68) and a motion to stay (ECF No. 60). Respondent has filed a motion to revoke Petitioner's bond (ECF No. 70) and a motion to expedite the decision to revoke Petitioner's bond (ECF No. 77). For the reasons that follow, the Court is staying these habeas proceedings, denying without prejudice Petitioner's Rule 60(b) motion, denying Respondent's motion to revoke Petitioner's bond, and denying as moot Respondent's motion for an expedited decision on bond.

But first, the Court addresses Respondent's argument that the Sixth Circuit's mandate leaves nothing for this Court to do but to deny Petitioner's application for habeas relief with prejudice.

**The Mandate Rule**

At the conclusion of its decision, the Sixth Circuit reversed and remanded "with instructions to deny the petition with prejudice." *Moss*, 62 F.4th at 1014. The subsequent mandate contained the same instructions. (*See* ECF No. 66.) Under "the 'mandate rule' . . . a district court is bound to the scope of the remand issued by the court of appeals." *Cont'l Casualty Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 834 (6th Cir. 2019) (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)). Nevertheless, the rule is "not without exception." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994); *see also United States v. Connell*, 6 F.3d 27, 31 (1st Cir. 1993) (explaining that the rule is not "designed to function as a straitjacket").

In fact, many circuit courts, like the Sixth Circuit, recognize exceptions to the mandate rule. *See Moored*, 38 F.3d at 1421 (recognizing that "the trial court may still possess some limited discretion to reopen the issue in very special situations"); *see also United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (providing that the mandate rule has the same exceptions as the doctrine of the law of the case); *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1133 (10th Cir.

3

2001) (quoting *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996)) (explaining that "a district court may deviate from the mandate rule 'under exceptional circumstances, including (1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) if blatant error from the prior decision would result in serious injustice if uncorrected"); *United States v. Bell*, 988 F.2d 247, 250-51 (1st Cir. 1993) (collecting cases and providing that the district court has "some limited discretion to reopen [an] issue in very special situations"); *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986) (stating that a court may depart from the mandate rule under "special circumstances" or for "truly compelling reasons"). This Court finds "special," "exceptional," and "truly compelling reasons" warranting an exception to the mandate rule here.[1]

---

[1] Although not a reason to disregard the Sixth Circuit's mandate, this Court observes that the appellate court's instruction to dismiss the petition with prejudice may have been premature. Petitioner filed a motion after this Court initially denied his habeas corpus petition, seeking reconsideration of the Court's ruling on his four grounds for habeas relief. (*See* ECF No. 21.) After full briefing on the motion, this Court concluded that it had committed a palpable defect when deciding Petitioner's ineffective assistance of counsel claims (claims 1, 3, and 4). (ECF No. 33.) Having reached that decision, the Court found it unnecessary to reconsider Petitioner's second claim. (*Id.* at PageID. 1845.) The Sixth Circuit acknowledged this in its decision, *see Moss*, 62 F.4th at 1008 n.3; and, noting that Respondent only appealed the reconsideration decision, indicated that Petitioner's second claim was not before it on appeal, *id.* Thus, this claim remained to be adjudicated on remand despite the Sixth Circuit's ruling. *See Maslonka v. Hoffner*, No. 21-2929, 2023 WL 1463354, *1 (6th Cir. Feb. 2, 2023) (concluding that the district court (Cont'd . . .)

4

Specifically, while this case was on appeal, the Court received a letter from David Steingold, the attorney who last represented Petitioner in the trial proceedings, including at the entrapment hearing and bench trial. (ECF No. 52.) In that letter, Mr. Steingold shared his belief that Petitioner "absolutely deserves a new trial, but not for the reasons stated in [the Court's] Opinion." (*Id*. at PageID. 1991) He noted that "the factual scenario presented to [the Court] was lacking." (*Id*.)

Mr. Steingold then described a "secret entrapment hearing" which had occurred before he was appointed to represent Petitioner—i.e., a hearing separate from the on-the-record one in which Mr. Steingold participated—that was held in the trial judge's chambers, without Petitioner, and without Petitioner's knowledge. (*Id*. at PageID. 1993.) Petitioner's previous attorney, Charles Toby, informed Mr. Steingold that he was not allowed to tell Petitioner about the hearing or of the witness who testified at the hearing, and he was not permitted to obtain Petitioner's assistance in preparing for the hearing. (*Id*.) Counsel, in fact, had to sign an

---

had the authority to hear the petitioner's claims which it did not address because habeas relief was granted on other claims and acknowledging that the appellate court's prior remand order should not have been so constrained as to preclude the district court from considering a claim not yet fully adjudicated); *see also id.* at *2 ("Under *Corcoran v. Levenhagen*, 558 U.S. 1, 2-3 (2009), federal appellate courts err when they reverse a district court's habeas grant and remand with instructions that leave undecided a petitioner's raised-but-unadjudicated claims.").

agreement, consenting to be bound by a signed protective order concerning the hearing. (*Id.*; *see also* ECF No. 5-2 at PageID. 953-66.)

This protective order precluded "*any* disclosure" of "protected material." (*See* ECF No. 5-12 at PageID. 954 (emphasis added).) "Protected Material" was defined as:

> [A]ny name(s)[,] information, transcript or document that is referenced during or produced as a result of the in-camera hearing of the cooperating witness, [and] any recording or transcript that is produced from the hearing. It also includes for purposes of Defense Counsel the fact that the hearing is being held and the date and time of [the] hearing.

(*Id.*)

After signing the protective order, Mr. Steingold was allowed to view a video recording of the in-camera hearing. (ECF No. 52.) However, he was permitted to view it only once, and was not allowed to bring a recorder, paper, or writing utensils to take notes. (*Id.*) Mr. Steingold describes what occurred as "the single most egregious due process violation [he] had ever encountered." (*Id.*)

Petitioner only learned about this secret hearing because Mr. Steingold's letter was docketed by the Court. (*See* ECF No. 69 at PageID. 2150.) Petitioner has since, through counsel, attempted to obtain the recording of this proceeding. Initially, the Oakland County Prosecutor's Office told Petitioner's counsel that there may never have been a recording of the proceeding, or that any recording had

been destroyed.  Counsel more recently learned that a sealed recording exists, but it still has not been produced.

When habeas counsel began inquiring about the recording, counsel learned that the Conviction Integrity Unit ("CIU") of the Oakland County Prosecutor's Office has had a file open regarding Petitioner's convictions since April 2023.  According to habeas counsel, the CIU will not decide whether to conduct an official investigation until Petitioner's federal habeas proceedings conclude or are held in abeyance.

The Sixth Circuit did not discuss or even make note of Mr. Steingold's letter or the information contained in that letter when ruling in its 2-1 decision that Petitioner's first, third, and fourth claims in fact did not entitle him to habeas relief.[2]  See *Moss*, 62 F.4th at 1005-14.  The Honorable R. Guy Cole, Jr. did not mention the letter or its contents in his dissenting opinion, either.  *Id.* at 1014-28.  Therefore, the appellate court did not consider this information when deciding whether a state actor prevented Petitioner's trial counsel from adequately

---

[2] In fact, the letter and its contents were not mentioned by the parties in their appellate briefing; nor were they mentioned by the parties or Sixth Circuit panel at oral argument.  Perhaps this was because the information was not part of the record considered by this Court and/or because the "letter" was docketed after the decision which was the subject of the appeal, and there was no reason for the parties or appellate court to review entries after that decision.  Or perhaps because the record of the in-camera hearing had not yet been produced, its impact was—as it currently is—unknown.

representing him to make the presumption-of-prejudice analysis in *United States v. Cronic*, 466 U.S. 648 (1984), applicable. *See Moss*, 62 F.4th at 1012. As raised in Petitioner's pending Rule 60(b) motion, the omission of this information from the Rule 5 materials raises a significant question concerning the procedural integrity of these habeas corpus proceedings. The information also may reveal constitutional infirmities with respect to Petitioner's convictions which Petitioner could not have known and which could not otherwise be gleaned from the existing record.[3]

## Petitioner's Request for a Stay

For these reasons, the Court finds a stay warranted to enable Petitioner to secure the record of the in-camera proceeding, as well as to allow the CIU to review his convictions. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (providing that a stay of habeas proceedings may be appropriate for "good cause" and where claims are "potentially meritorious" and "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics"); *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he

---

[3] The Court finds it premature to decide Petitioner's Rule 60(b) motion until the record of the "secret entrapment hearing" is obtained.

is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry").[4]

Respondent argues—although not in response to Petitioner's motion to stay—that Petitioner has delayed pursuing the record of the in-camera hearing where there are references to the proceeding in the Rule 5 materials filed in December 2018.  The Rule 5 materials do allude to the proceeding.  However, they do so only because the protective orders signed by Petitioner's trial counsel (which reference an in-camera hearing) were attached to a motion Petitioner's appellate counsel filed.  (*See* ECF No. 5-12 at PageID. 949-966.)  The motion itself did not refer to the in-camera hearing or seek the record of that hearing, but requested "an order requiring the Prosecution to disclose whether it has secured, directly or indirectly, any evidence through the use of a confidential informant." (*See id.* at PageID. 949-51.)

The prosecution opposed the request and represented what purportedly occurred during the in-camera proceeding and what was purportedly gleaned from the proceeding.[5]  (*Id.* at PageID. 969-73.)  The Michigan Court of Appeals denied

---

[4] *Bracy* addressed discovery beyond the existing state-court record.  Its reasoning has even greater meaning where the petitioner is seeking to uncover materials that are part of that record but have not been disclosed.

[5] In its response to appellate counsel's motion, the prosecution asserted that any request to access the information concerning the confidential informant and the (Cont'd . . .)

the motion, and thus Petitioner was denied the ability to obtain this portion of the trial court record. (*Id.* at PageID. 974.)

The record does not reflect that appellate counsel informed Petitioner of the in-camera proceeding or the existence of a record of that proceeding. Nor does the record reflect whether Petitioner was informed of appellate counsel's motion. Therefore, it does not contradict Petitioner's claim that he was unaware of the in-camera proceeding until Mr. Steingold's letter to this Court was docketed in February 2022. (*See* ECF No. 69 at PageID. 2150.) In any event, as Petitioner argues, neither a transcript nor a copy of the recording of the hearing were included in the Rule 5 materials Respondent filed here.

Respondent maintains that the sealed video of the in-camera proceeding did not have to be included in the Rule 5 materials because Petitioner did not raise any issue in his habeas petition concerning the hearing. It goes without saying that Petitioner obviously did not do so because he was unaware that the hearing had

---

record of the in-camera proceeding should be brought before the trial court. (*See* ECF No. 5-12 at PageID. 971.) There is no indication that appellate counsel pursued this avenue. Nor is there any indication that the attorney who subsequently represented Petitioner when he filed his post-conviction motion in the trial court did so either. In fact, this was the same attorney who initially represented Petitioner in these federal habeas proceedings. The Court must presume from the filings prepared by this attorney in both proceedings that he, too, was unaware of the in-camera proceeding.

occurred. But, also, it is not clear that Respondent's assertion is correct.[6] First, it is unclear whether Respondent's counsel has even viewed the recording to assess

---

[6] Respondent asserts that the record of the in-camera proceeding is not important because only one confidential informant had any involvement in the conduct underlying Petitioner's convictions and that individual testified at the entrapment hearing. The prosecution has represented that the second informant was questioned during the in-camera hearing, and the trial court concluded that this individual had minimal interaction with Petitioner. As Petitioner had no knowledge of the hearing and could not assist his trial counsel in connection with the in-camera hearing, and because counsel could not discuss or share any information about or from the hearing with Petitioner, the informant's testimony has never been tested and meaningful review of the state court's assessment has been impossible. There also has been no meaningful review of Respondent's and the prosecution's representations of what occurred during this proceeding.

Petitioner has maintained that the person who entrapped him was not the individual produced at the in-court entrapment hearing. It appears from the record that Mr. Steingold tried to argue for that individual's presence but even his allusion to that person was shut down—that is, he was not even allowed to make the argument—because of the protective order. (*See, e.g.*, ECF No. 5-2 at PageID. 105-107.)

Petitioner claimed the individual who entrapped him and who introduced him to "Diego" (i.e., the DEA informant from whom the drugs were purchased) was Michael Bennett. (*See* ECF No. 5-2 at PageID. 109.) The state-court record reflects that Petitioner met Bennett through Petitioner's cousin, while the cousin and Bennett were incarcerated together. (*See* ECF No. 5-2 at PageID. 109-110.) After Bennett was released from prison, he sought out Petitioner, purportedly for real estate investment advice. (*Id.* at PageID. 111-52.) A year and a half later, after numerous instances where Bennett showed up unexpectedly at Petitioner's work or otherwise reached out to Petitioner, Bennett convinced Petitioner to loan him money to purchase cocaine for sale. (*Id.*)

If Bennett was the individual questioned during the in-camera proceeding, the trial court' conclusion that he had minimal interaction with Petitioner raises concerns, particularly as this determination was made before the trial court heard Petitioner's testimony. If this individual was not Bennett, where was Bennett, as he was not a witness at the on-the-record entrapment hearing or at trial?

11

its relevance.  Second, as stated in Mr. Steingold's letter (*see id.*), and as reflected in his testimony at the state-court *Ginther* hearing[7] (*see* ECF No. 5-9 at PageID. 768, 778, 796), the in-camera proceeding is relevant as Mr. Steingold asserts that it directly impacted his ability to effectively represent Petitioner.  The hearing also may be relevant to the performance of the attorney who represented Petitioner before Mr. Steingold and who handled this "secret entrapment hearing."

In short, Petitioner may be able to demonstrate a defect in the integrity of these federal habeas proceedings arising from the absence in the Rule 5 materials of the previously undisclosed record of the in-camera hearing before the trial court.  Without access to that record, it is impossible to evaluate the impact its absence has had on these proceedings.  The Court cannot ignore Mr. Steingold's assertion that what happened in that proceeding represented "the single most egregious due process violation [he] had ever encountered."  (ECF No. 52.)  The Court is at a loss for why Respondent is so insistent on these habeas proceedings being deemed closed instead of allowing a complete record to be developed to ascertain whether Petitioner's constitutional rights were violated.

---

[7] *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

The Court, therefore, is granting Petitioner's motion to stay these habeas proceedings to allow him to obtain this sealed material in the state court record and to allow the CIU to review his convictions.

### Petitioner's Bond

The question remains whether Petitioner should be returned to custody in the interim. Respondent has filed several motions seeking the revocation of Petitioner's bond since the Sixth Circuit issued its decision. This Court remains convinced that the relevant factors weigh in favor of retaining his bond status.

Although the presumption for bond may have dissipated with the Sixth Circuit's decision, a federal habeas court still may release a habeas petitioner on bond pending a decision on the merits where the petitioner demonstrates "a substantial claim of law based on the facts surrounding the petition" and "some circumstance making the motion for bail exceptional and deserving of special treatment in the interests of justice." *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964)) (brackets omitted); *see also Pouncy v. Palmer*, 993 F.3d 461, 463 (6th Cir. 2021) (quoting *Dotson*, 900 F.2d at 79) ("A prisoner seeking bail pending review of his habeas petition must, among other requirements, convince the district court that exceptional circumstances and the 'interests of justice' warrant relief."). The Sixth Circuit has observed that

13

"[t]here will be few occasions where a prisoner will meet this standard." The Court finds this to be one of those occasions, however.

The Sixth Circuit rejected Petitioner's argument that his ineffective assistance of counsel claims were controlled by *Cronic*, finding that "the complete-denial scenario" did not apply because there was no evidence that Petitioner's trial counsel "was physically absent throughout an entire phase of the litigation or that a state actor prevented . . . counsel from adequately representing him."[8] *Moss*, 62 F.4th at 1012. Yet, there is now a strong indication that an undisclosed portion of the state court record reflects that state action did prevent trial counsel from adequately representing Petitioner. That undisclosed information may shed a different light on the performance of counsel representing Petitioner, both the attorney who handled the entrapment hearing and trial and the attorney(s) preceding him.

Petitioner, therefore, still has "a substantial claim of law." *Dotson*, 900 F.2d at 79. These circumstances also make "the motion for bail exceptional" and "deserving of special treatment in the interests of justice." *Id.* The other factors relevant to deciding whether to continue Petitioner's bond also favor doing so.

---

[8] Judge Cole dissented, concluding that trial counsel constructively abandoned Petitioner pretrial and at trial, and that the state court's decision was contrary to, or involved an unreasonable application of, clearly established law. *Moss*, 62 F.4th at 1025-28.

Petitioner's only convictions are for the offenses at issue in this habeas case. Neither conviction is for a crime of violence, and Respondent has offered no evidence that Petitioner poses a risk of harm to anyone. Respondent points out that Petitioner was carrying a firearm when he was arrested; however, there is evidence in the record that Petitioner had a concealed pistol license and usually carried his weapon with him. (*See* ECF No. 5-2 at PageID. 281.) Respondent offers no evidence that Petitioner has ever threatened anyone with the weapon or used it against anyone.

Petitioner has been living in the community on bond for more than two and a half years. He lives with his wife and teenage daughter, and is an integral part of their lives and, in particular, his daughter's well being. He has been working and helping to support his family while on bond. He volunteers in the community. Petitioner has complied with all of the conditions of his release.

Respondent asserts that Petitioner is a flight risk because, with this Court's grant of habeas relief reversed, he has an incentive to flee rather than return to prison for another six (his earliest release date) to thirty-six (his maximum discharge) years. But this is pure speculation and would apply to any defendant facing a potential prison sentence. Moreover, the consequences to Petitioner of fleeing and then likely being caught present a far greater risk to him—including the impact on these continuing habeas proceedings—than the likely six years he has

15

left to serve, particularly where he still has some chance of demonstrating that his convictions were unconstitutionally obtained. *See Taylor v. Egeler*, 575 F.2d 773 (6th Cir. 1978) (dismissing habeas petition under the fugitive disentitlement doctrine where the petitioner escaped during the proceedings).

Petitioner will suffer irreparable harm if he must return to prison. "[T]he public has an interest in the state not continuing to incarcerate individuals . . . who have not been accorded their constitutional right to a fair trial. *Pouncy v. Palmer*, 168 F. Supp. 3d 954, 969 (E.D. Mich. 2016) (internal quotation marks, brackets, and citation omitted). Respondent's interest in having a convicted defendant serve the full sentence imposed will be fulfilled if Petitioner ultimately does not prevail in these habeas proceedings.

## Conclusion

For the reasons stated, the Court **GRANTS** Petitioner's motion to stay (ECF No. 69) these habeas proceedings to allow Petitioner to obtain the previously undisclosed record of the in-camera proceeding held in the trial court and to allow for the CIU to review his case. Within forty-five (45) days of this Opinion and Order, Petitioner shall file a notice on the docket reflecting the status of his efforts to access the sealed record and any information obtained from the CIU regarding its review. Moreover, he must continue to apprise the Court of the progress of both issues every forty-five (45) days.

16

Petitioner's Rule 60(b) motion (ECF No. 68) is premature; therefore, it is **DENIED WITHOUT PREJUDICE**. The Court concludes that Petitioner shall continue on bond. Therefore, Respondent's motion to revoke his bond (ECF No. 70) is **DENIED** and the motion to expedite the decision on bond (ECF No. 77) is **DENIED AS MOOT**.

    **SO ORDERED**.

                                                  s/ Linda V. Parker  
                                                  LINDA V. PARKER  
                                                  U.S. DISTRICT JUDGE

Dated: September 27, 2024